[Cite as *State v. Hawkins*, 2020-Ohio-5103.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CHAMPAIGN COUNTY**

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-34 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-214 |
| | : | |
| | : | (Criminal Appeal from |
| GEORGE H. HAWKINS | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of October, 2020.

. . . . . . . . . . .

SAMUEL ADAM USMANI, Atty. Reg. No. 0097223, Champaign County Prosecutor's Office, Appellate Division, 200 North Main Street, Urbana, Ohio 43078
  Attorney for Plaintiff-Appellee

THOMAS M. KOLLIN, Atty. Reg. No. 0066964, 3725 Pentagon Boulevard, Suite 270, Beavercreek, Ohio 45431
  Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} George H. Hawkins pled guilty in the Champaign County Court of Common Pleas to an amended charge of domestic violence, in violation of R.C. 2919.25(A), a felony of the fourth degree. Hawkins was on post-release control when the offense occurred. The trial court sentenced Hawkins to 18 months in prison for the domestic violence. Pursuant to R.C. 2929.141, the trial court also terminated his post-release control and imposed 832 days in prison, to be served consecutively to the 18-month sentence. Hawkins appeals from his conviction, challenging his sentence. For the following reasons, the trial court's judgment will be affirmed.

## I. Facts and Procedural History

{¶ 2} At Hawkins's plea hearing, the prosecutor provided the following underlying facts.

* * * Champaign County Sheriff Deputies were dispatched August 16, 2019, herein in Champaign County, Ohio, to 8377 Urbana Woodstock Pike in Rush Township, on a report of a female crying in a vehicle.

The female made her way to 265 West Elm Street in North Lewisburg and called 911 from that location. Law enforcement was able to identify this individual * * *. [The victim] indicated that she was the victim of a domestic violence incident between herself and the Defendant. The Defendant, she indicated, is the father of her daughter. And that they were coming home from some sort of celebratory gathering. And while they were driving in the motor vehicle she indicates that the Defendant became angry for an unknown reason, pinned her back by striking her in the chest,

grabbed the steering wheel of the motor vehicle while it was moving, and, from her perspective, attempted to crash the vehicle. The [victim] stated that Defendant hit her in the arm.

  * * * [T]he Defendant was also intoxicated at the time this occurred. The Defendant was subsequently located by law enforcement and was found to be intoxicated. He was interviewed and denied – at the time he denied engaging in the domestic violence incident as described by [the victim]. * * *

{¶ 3} Hawkins was indicted on one count of domestic violence, a third-degree felony based on an additional allegation in the indictment that Hawkins had previously pleaded guilty to or been convicted of six offenses of domestic violence. The parties subsequently reached an agreement that Hawkins would plead guilty to an amended charge of domestic violence, a fourth-degree felony based on his having previously pleaded guilty or been convicted of domestic violence in Champaign C.P. No. 2013-CR-327. The parties also agreed that Hawkins was subject to 856 days in prison if his post-release control were revoked. (The parties referred to additional prison term as "post release control enhancement time.") After a Crim.R. 11 hearing, the trial court accepted Hawkins's guilty plea and, at Hawkins's request, ordered a presentence investigation.

{¶ 4} Defense counsel filed a detailed sentencing memorandum addressing the purposes and principles of sentencing under R.C. 2929.11 and the sentencing factors under R.C. 2929.12. With respect to the seriousness of the offense, counsel argued that, during the offense, the victim was also intoxicated and had refused to stop the car. Counsel stated that "Defendant's actions towards the victim were solely to get the Victim

to stop the vehicle and allow the Defendant to extricate from the argument and the Victim's threat of taking him to prison." Counsel asserted that Hawkins did not intend to cause harm, although he did. As for the likelihood of recidivism, counsel acknowledged that Hawkins had been on post-release control and had prior adjudications as a juvenile, but asserted that Hawkins had an addiction to alcohol, was willing to obtain treatment, and was remorseful for his actions. Counsel argued that Hawkins's sentence should focus on rehabilitation.

{¶ 5} At the sentencing hearing, the trial court heard from defense counsel, the prosecutor, Hawkins, and the victim. Speaking on Hawkins's behalf, defense counsel indicated that Hawkins was ashamed of his actions, but acknowledged that recidivism was "very likely." Counsel argued, however, that Hawkins had never had an opportunity to complete treatment at West Central (Hawkins had gone to West Central, but could not complete the program due to a medical issue), and that Hawkins's childhood trauma had led to the drug and alcohol abuse, as well as issues with aggression and impulsivity. Counsel argued that Hawkins had reached a point in his life where he was ready to change. Counsel agreed that the proposed conditions for community control – that he have no contact with the victim or their 25-year-old daughter – were appropriate and that Hawkins had no objection to them.

{¶ 6} The victim directed her remarks to Hawkins. She told him that she forgave him and encouraged him to get mental health treatment.

{¶ 7} The prosecutor disputed Hawkins's assertion that he was taking responsibility for his actions; the prosecutor noted that Hawkins suggested, mainly in his sentencing memorandum, that he was provoked by the victim. The prosecutor further

emphasized Hawkins's lengthy criminal history, which began when Hawkins was 13 years old. The prosecutor noted 16 adjudications of delinquency and 46 adult convictions. (Hawkins was 42 years old at sentencing.) The prosecutor counted 25 crimes of violence, including assaults and prior acts of domestic violence. The prosecutor stated that Hawkins had been to the Department of Youth Services, to jail, to prison (five times), on post-release control, and to West Central; the current offense was committed four months after Hawkins's release from prison, while he was on post-release control. The State requested the maximum 18-month sentence plus "post-release control enhancement time" of 832 days.

{¶ 8} Speaking on his own behalf, Hawkins apologized to the victim, expressed that he was ashamed of his actions, and asked the court to help him with his alcohol addiction. Hawkins told the court about the sexual, physical, and emotional abuse he had endured as a child. He explained that he turned to alcohol to "take[ ] away [his] pain." Hawkins asked the court not to send him to prison, but to send him to West Central for six months and then to "[V]OA"[1] for an additional six months. Hawkins also asked the court to let the parole board address his post-release control violation.

{¶ 9} As stated above, the trial court imposed the maximum term of 18-months in prison for the domestic violence. It also terminated Hawkins's post-release control and ordered him to serve an additional 832 days for the post-release control violation. In doing so, the trial court acknowledged that Hawkins had gone to West Central once before and had not been kicked out, but the court questioned the appropriateness of West

---

[1] Hawkins may be referring to a residential program offered by Volunteers of America, but the record does not clarify his request.

Central in this case.   It told Hawkins:

> * * * "[West Central] might have been appropriate some time ago.   But, nevertheless, it is difficult at this point in time to say whether West Central may do you some good.   And as I read the PSI, I could see where the problems with you seemed to have started when you were a child and the way you were treated.   Which was not the best in the world.   Assuming what you are telling them is accurate about your upbringing.   And there is probably more responsibility for your behavior for the way that you were brought up than any of us know.   But I can't go back and correct any of that at this point in time.
>
> And at this point in time there is really very little that the Court can do.   West Central is just a holding place for you.   And that is going to be the extent of it.   And I don't find that West Central is going to be appropriate under your circumstances.

The court noted that Hawkins had been in and out of prison, and that it was "time for in again.   And it is unfortunate.   There isn't any reason why it should have to be that way.   But you evidently can't control your behavior."

{¶ 10} The trial court orally stated that it had considered the purposes and principles of sentencing under R.C. 2929.11, balanced the seriousness and recidivism factors under R.C. 2929.12, considered the oral statements of Hawkins and counsel, the presentence investigation report, a written statement by Hawkins, and the factors in R.C. 2929.13(B).   In its judgment entry, it noted with respect to R.C 2929.13(B) that Hawkins had previously served five prison terms for aggravated assault (1997), abduction (2008),

and domestic violence (2011, 2012, 2013), that he was on post-release control when he committed the instant offense, and that he had a high Ohio Risk Assessment score.

{¶ 11} Hawkins appeals from his conviction, challenging his sentence.

## II. Review of Hawkins's Sentence

{¶ 12} Hawkins's sole assignment of error claims that "[t]he trial court's sentence does not conform to the relevant Ohio sentencing statutes, resulting in an abuse of discretion." Specifically, Hawkins argues that the trial court failed to properly consider rehabilitation as a purpose of felony sentencing and to properly weigh the statutory factors under R.C. 2929.12.

{¶ 13} In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2), rather than an abuse of discretion standard. *See State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law. *State v. Huffman*, 2d Dist. Miami No. 2016-CA-16, 2017-Ohio-4097, ¶ 6.

{¶ 14} "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). However, in exercising its discretion, a trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard*, 194 Ohio App.3d 500,

2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

{¶ 15} R.C. 2929.11 requires trial courts to be guided by the overriding purposes of felony sentencing. Those purposes are "to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). The court must "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.* R.C. 2929.11(B) further provides that "[a] sentence imposed for a felony shall be reasonably calculated to achieve the three overriding purposes of felony sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

{¶ 16} R.C. 2929.12(B) sets forth nine factors indicating that an offender's conduct is more serious than conduct normally constituting the offense; R.C. 2929.12(C) sets forth four factors indicating that an offender's conduct is less serious than conduct normally constituting the offense. R.C. 2929.12(D) and (E) each lists five factors that trial courts are to consider regarding the offender's likelihood of committing future crimes. Finally, R.C. 2929.12(F) requires the sentencing court to consider the offender's military service record, if any.

{¶ 17} Upon review of the record, the trial court's 18-month sentence was not

clearly and convincingly unsupported by the record. Hawkins was expelled from high school for fighting, and he had been involved with the court system since he was 13 years old. The PSI showed 16 juvenile adjudications, many of which involved assaultive behavior. Hawkins had nearly four dozen adult convictions, most of them consisting of assault, domestic violence, or disorderly conduct (with underlying assaultive behavior). Hawkins had been in and out of the Department of Youth Services, jail, or prison for most of his life.

{¶ 18} The PSI indicated that Hawkins's actions in this case caused bruises to the victim's chest and arms. She further reported that Hawkins grabbed the steering while of the vehicle in which they were traveling and tried to crash to vehicle. As stated above, Hawkins has a long-standing history of domestic violence and assault.

{¶ 19} Hawkins has not demonstrated that he can successfully complete community control. For example, in 2012, Hawkins was placed on community control, which was later revoked due to a new felony offense. In 2017, Hawkins committed an offense while under post-release control. He was also under post-release control when he committed this domestic violence offense. Hawkins had four rule infractions while in prison, although none led to his removal from the general population.

{¶ 20} Hawkins's statements to the court and the PSI investigator regarding his childhood trauma and ongoing addiction indicate that Hawkins would benefit from mental health and addiction counseling. Nevertheless, given Hawkins's lengthy history of violence offenses and the outcomes of his prior juvenile and adult criminal cases, we cannot conclude that the trial court's 18-month sentence or its termination of post-release control and the imposition of a prison term was clearly and convincingly unsupported by

the record.

{¶ 21} Hawkins's assignment of error is overruled.

### III. Conclusion

{¶ 22} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies sent to:

Samuel Adam Usmani
Thomas M. Kollin
Hon. J. Timothy Campbell, Visiting Judge